Good morning. Before we begin this morning we have a function, a pleasant motion as opposed to the kind we usually get. Well, I won't question the latter part of that statement but I certainly endorse the first part of it. I would like to move the admission of Esau Emizo who is a member of the bar in good standing of the highest courts of New Jersey and New York. I have knowledge of her credentials and I'm satisfied that she possesses the necessary qualifications. That's the formal statement I'm obligated to make but I will go further and say that Cheryl Lynn has been an outstanding law clerk of mine for two years and she's been a pleasure to work with. She's done outstanding work and I would be extremely sorry to see her leave. So with those comments I move her admission and trust the panel will deliberate seriously on the issue. Your motion is granted Judge Lurie. Thank you. Please raise your right hand and face the clerk. Do you swear or affirm that you yourself are the attorney and constable of this court outrightly and according to the law and that you will support the constitution of the United States of America? Thank you. Congratulations and welcome to the bar of the United States Court of Appeals. And I would like to echo the welcome on behalf of my colleagues and we look forward to seeing you here regularly for social events. My first case this morning is 07-1545-1569 Qualcomm Incorporated v. Broadcom Corporation. Mr. Phillips. Good morning, your honors. May it please the court. The fundamental issue in this case is what duty Qualcomm owes to the standard setting organizations. This court held in Rambis that in determining the duty it looked to the contractual relationship between each of the individual members and the standard setting organizations in order to ascertain that. The district court in this specific case, in the joint appendix on page 50, held with respect to those documents that the JVT, which is the standard setting organization specifically at issue here, its intellectual property rights policy and guidelines provide no express requirement to disclose patents unless a member submits a technical proposal. In point of fact. Mr. Phillips, didn't your client have a lot of facts found against it with respect to what it knew, what it participated in, that it had to know that its patents would be impacted in use of the standard? And that's a pretty steep hill to climb. Isn't your best argument getting to this question of waiver? This is a new holding, isn't it? Absolutely. There's no precedent to support the idea that you can employ waiver in an affirmative context as they have done here to deprive us of our entire intellectual property rights. But why not? If the holding was that Qualcomm should have disclosed the existence of these patents to people who were going to use the standard and didn't, why is it unfair for the court, sitting as a court of equity in effect, to simply say, well, therefore you waived your patent rights, analogous to inequitable conduct in the prosecution of patents in the Patent Office? Well, there are a couple of answers to that. The first one is, having only raised as an affirmative defense waiver, the idea that you can go beyond that and use that affirmatively to deprive us of our intellectual property rights is unprecedented. And second, I think more important— But what does waiver mean? Well, that goes to the second point I was going to make, is that you waive your rights vis-a-vis the specific individual who's properly before the court. You don't waive your rights as to all entities beyond that. Because that's what equitable estoppel is for. Well, how about all entities using that standard? Because they are impacted just as much as Broadcom was. Well, that's where the district court started, was to examine it in the context of that specific standard and then concluded nevertheless to extend it beyond not only those who would have relied on the standard but withdrew our entire intellectual property rights in a way that this court has never embraced. But I think the more fundamental problem here still remains that when you assert waiver as a defense, you put the other side on notice that as between the two of you, you have an issue. But unless you put it as a defense, as an affirmative request, that you're claiming equitable estoppel, then it seems to me that it's a litigation dodge and, candidly, the court ought to check. In this case, they really couldn't have pled equitable estoppel because of the fraud that your client had perpetrated on the process by withholding all the information and denying the facts that turned out to have been false. That information didn't come out until after the trial, so they couldn't have amended their complaint. But the point here is that they could have. Equitable estoppel. Yeah, but they could always have raised the question of whether or not they had detrimentally relied on failure to provide information. I mean, it was their theory all along that we had failed to provide information. And so the question is, would anything have been handled differently if all of this information had been provided? And they never undertook to prove that the JVT would have done anything differently if all of the information had been provided. And so, therefore, there is no basis for a finding of detrimental reliance. It's not simply that they didn't have an opportunity to do it. They chose, as a tactical matter, to pursue this as a matter of waiver and not as a matter of equitable estoppel. And recall, they tried late in the litigation to add an equitable estoppel claim and the district judge denied them the opportunity and said, no, we're going to try this as a waiver claim. But, Judge Lurie, I want to go back because you leap forward to the question of the remedy and I recognize that this is an unprecedented remedy and troublesome. But I don't think you even get to the point of analyzing what we knew when unless you find under Rambis that there is a clear duty to disclose Well, let me go back to that point then. It is correct, is it not, that in Rambis the court didn't rely exclusively on the JDEX policy in the case. That they relied on the testimony and the other evidence of witnesses to suggest what members understood that policy to be. Right. So the fact that the court here said there's not necessarily an explicit disclosure requirement is not the end of the story. It should be the end of the story in this case because the situation in Rambis is fundamentally different from the situation in this case. In this case, the language, and it's stated most plainly in the patent application, or in the disclosure form which is Joint Appendix 8179, says JVT requires, okay, that's the mandatory obligation requires that all technical contributions be accompanied with this form. And then it goes on, anyone, meaning others not making a contribution, with knowledge is strongly encouraged to provide that knowledge. Well, let me take you back then to subsection 3.2 which also you rely on the fact that it has encouraged language, right? Right. Encouraged to disclose. But it also says such information should be provided on a best effort basis. Best effort to do what? Just to use whatever is available to you under those circumstances. Isn't it the best effort to disclose the relevant information? No, Sullivan's testimony was that this was all designed as a much less formal approach. That best efforts is not, as you might think of it, as a contractual obligation. In fact, he expressly states that it's not designed to create a contractual responsibility. But how would you construe such information should be provided on a best effort basis? Best effort to do what? Best effort to provide the information, correct? That's readily available to you. As I understand the way that was intended, it's simply the information that's known to you. That's readily available. And that also fully consists of the fact. And is there any evidence in the record here that your client Qualcomm exercised any efforts let alone their best efforts to disclose information associated with any standardization proposal? When we made a formal technical contribution yes, we disclosed our intellectual property rights. But that wasn't my question. My question was, is there any evidence to demonstrate that they exercised any effort to disclose what this provision in 3.2 says, information associated with any standardization proposal of their own or anyone else? No, we didn't. Because we did not view that as imposing a duty on us to actually obtain any information. And that's not the finding of the district court. The district court didn't hold that we failed to exercise best efforts. That's an argument that Broadcom has now offered up in defense. The district court did find that you had an obligation to disclose the information. Right, but that obligation was based on his misinterpretation of the operative language of the JVT. He's the one, as I say, the key to this case is Rambis says, if you're in a world where the disclosure responsibilities are not delineated, then you can go beyond to determine what the understandings of the parties are. If you're in a world, which is the world we're in, where the disclosure obligations are absolute and clear, you have an absolute obligation to disclose if you make a technical contribution, you can't go beyond that. You can't then say, oh, and will we modify the language of the disclosure obligation to add, after the fact, duties that otherwise would never have existed. And that's the difference with Rambis. But like Rambis, Rambis didn't find the disclosure obligation in the language of the JEDAC requirements, right? They found it with respect to the testimony, which is sort of what the district court did here. And at what level do we review those findings? Well, that's going to be a question of law. It seems to me you have to look as a question of law as to whether or not the documents, because this is a contract, whether these documents impose this duty in a particular way and therefore don't impose it in another way. But didn't Rambis also look to the members and the understanding of the membership and then conclude that based on the understanding of the membership that was what brought on the duty of disclosure, right? So here wasn't at least fair game for the district court to look at other evidence other than the documents to determine whether or not parties understood there to be a disclosure requirement. I think it is what is, there's nothing in the JEDAC situation in Rambis that is akin to the language that exists in the JVT disclosure form that implements all of this. And I'll read it again. JVT requires that all technical contributions be accompanied with this form. Anyone else is encouraged to provide the information. What Broadcom is attempting to do here is to modify the fundamental understanding to impose on us the same duty that is expressly not provided for in the language of the agreement. And that's not, this language is not ambiguous. It demarks a very specific line. And it's important that the court stay to that line. Because that is the ultimately critical holding of Rambis, which is recognizing that when you have standard-setting organizations, they can set the rules however they want. If they want to impose a duty on us to provide information under all circumstances and in a way that's enforceable by the loss of broad patent rights, that's their power to do that. But of course you enter into the agreement with that understanding. And you assume that responsibility. I'm sorry. Mr. Phillips, I had one problem with one of your arguments where you said the fact that you had no obligation to disclose these patents is shown by the fact that the jury found no infringement of the patents by the users of the standard. Well, that to me almost qualified for a chutzpah award. After all... I don't usually seek that award. I know you don't. You sued under those patents. So how can you say that the jury's finding meant if you had no obligation because the patents weren't being infringed, why did you sue under them? Well, I suppose this is one of those where you run that risk when you bring litigation like this. I do think that if you read Rambis against the language, because the language that Broadcom relies upon for its reasonably might be used comes from the associated, associated with, and that's language that only deals with the precatory part of the JVT requirements. The language that deals with the mandatory parts talks specifically in terms of used in and necessary for. And this court interpreted that kind of language in Rambis as saying that if the patent doesn't read on the standard, then there is no violation. And we were simply making that same argument in this context. So you're saying that the standard in Rambis is that you look at the end of the day to whether or not one prevails on an infringement. And if not, then there's no way that reasonably, we can conclude that it was reasonably necessary? I don't know that that's the required reading of Rambis. I do think there is language in Rambis that suggests precisely that. But you have to concede there's other language in Rambis that says clearly. It includes the reasonably might be necessary standard, and it's not just in one place. It's in at least two places. They talk about that a member or competitor might reasonably would construe to be covered by the standardized technology. Right. And all we're suggesting, Your Honor, is that there is some ambiguity in what the court said in Rambis and if you take the specific language and the agreement as it exists here, which seems to talk about in fact and required and uses that kind of language, which doesn't seem to embrace reasonably might be included or relevant to, that that ought to drive you in that direction. But I think even more fundamentally then, even if you don't want to accept that argument as a basis for saying that we didn't breach any duty, what that argument still shows, which is the fundamental flaw of deviating from the agreement itself and adding in this post hoc testimony to try to impose duties. Because as the court said in Rambis, the real problem here is where is the who, what, when, how of how these duties arise? And if you go by the plain language of the agreement the way these duties arise is pretty clear. You make a technical contribution, you have a mandatory responsibility to disclose the intellectual property rights under those circumstances. If you don't, then the question is how broadly do you have to disclose intellectual property rights? Associated with is hardly language that provides you with much guidance. And what participation is adequate to justify requiring you to impose obligations under certain circumstances? To avoid all of that, the better course, because this is not a federal common law issue, this is a state question, the better course for the court to follow is to hoe assiduously to the agreement of the standard setting organization, enforce it by its terms, and do it in a way that protects these rights. Once, if I'm right about that, then all of the testimony and the rest of the analysis, which I think frankly doesn't get you to the point of intentional pre-litigation misconduct anyway, but I don't think you need to get to any of that and it's certainly a much more difficult task to kind of sort through all of that as part of this undertaking. And then you get to the equitable relief and what's available. Assuming I'm wrong, assuming there is a duty, it still seems to me quite clear that waiver was not the procedurally appropriate mechanism for doing this. It should have been done on a federal level. Let's hear it off on the other side and we'll give you your rebuttal time back. Mr. Lee, you need a couple extra minutes. Thank you, Your Honor. May it please the court, my name is Bill Lee and together with my partner Jack Regan we represent the appellate Broadcom Corporation. To go to Judge Lori's first question, this appeal does in fact arise from a very unique set of facts. Qualcomm itself refers to the district court's findings 79 times its opening brief. It's about those factual findings. Those unique facts led to very specific factual findings by the district court after two trials. A trial before a jury. Even if we hypothetically agreed with you, what are we to do now with the you don't concede in your briefs but you acknowledge at least at some level that waiver may not have been the right thing and you have maybe good reasons for doing it that way but the question is where does that leave us? Your Honor, I think waiver is the correct thing but let me describe how we got there because Mr. Phillips described this as a litigation dodge. Here is what our answer said as an affirmative defense. Waiver and other equitable defenses. Qualcomm now we know incorrectly asserted throughout the discovery process that it never participated in the JVT. As a result of our own investigation, we found a single document on the JVT website that indicated that that was false. That is the document that we introduced in the evidence and that is a document that caused the judge to say to Qualcomm directly are there any other documents and Qualcomm said no. After getting that document, we filed an interrogatory answer that said are other equitable defenses include equitable estoppel and implied license? Qualcomm then moved for summary judgment on waiver, equitable estoppel and implied license and it said you didn't sufficiently plead the latter two but in any event there is no basis for them because we never participated in the organization. So for Qualcomm now to suggest that we engaged in some sort of conscious decision to avoid the correct box is simply incorrect. If we had the information that we now had today, I have no doubt that Judge Brewster would have allowed us to amend. But what happened was they affirmatively at summary judgment moved on the basis that not sufficiently pleaded and the undisputed facts demonstrate they never participated. We now know that's not correct. Now even if that weren't true and it is true it's a little hard to penalize Broadcom for the box it found itself in as a result of what now has been revealed to be litigation misconduct. There is a waiver defense. There really is no dispute that you can waive a right. There really is no dispute and there wasn't a trial that silence in the face of a duty to speak can waive a right. That underlies Rambis to some extent. It is a waiver but the idea that you had a duty to speak and you didn't speak is what led to the quite often the debate between you and Judge Rader on whether there had been a fraud or not. But that is still the same underlying concept and waiver can be silence in the face of a duty to speak. And if you have a patent right and you have a duty to speak whether it be contractual, if it results from a fiduciary duty, if it results from membership and remember in this case Qualcomm having denied that it participated we now know was submitting membership forms and voting on proposals. So why are the patents unenforceable against the world? Well Your Honor I think that is first the court was sitting as a court in equity. Second it was looking at the question of if it just rendered them unenforceable against Broadcom which had obtained a non-infringement finding would that be sufficient to address both the underlying misconduct before the standard setting organizations and the subsequent misconduct that was part was intertwined it was an effort to conceal what had  it should have been unenforceable against members of the JVT. Which is what you asked for. I mean all you asked for was against 264 compliant technology products. That is true and I think quite honestly this is what the court was struggling with and it's a question of the collateral estoppel effects of the underlying judgment. If the collateral estoppel effects extend to any assertion by Qualcomm of those two patents against the H.264 standard and anybody being compliant with it then they would probably be that would probably be an awful lot of protection the question that arose at the hearings below was okay does it provide that much protection or not do I need to do something broader and we asked for something narrower we took the position that given this court. So what is the justification for doing something broader than what it is you asked for? Your honor I think it's an unprecedented fraud and at the end of the day and I don't use those words lightly at the end of the day this district court sat through two trials. It sat through a summary judgment hearing where it came within a hair's breadth of granting summary judgment precluding any of this evidence from coming in. He then sat and saw 300 exhibits and 18 witnesses testify. Significantly he found that many of the witnesses testified falsely or not credibly. One of the great ironies here is that and I'll get to the duty question in a minute the very witnesses that Qualcomm relies upon in it's brief to support it's articulation of the duty are expressly discredited in Judge Brewster's opinion. Richardson, Sagetown, Ballot. He affirmatively decided not to believe them and he was entitled to take their testimony that there was no duty and say I don't believe you and I'm going to infer that there is. So he found a duty irrespective of the weaknesses in the language of the document which says are encouraged to disclose as soon as possible but are encouraged. Let me say these three things and it's a part that Mr. Phillips didn't address. Judge Probst referred to section 3.2 of the JVT. The very first sentence of section 3.2 says we're governed by the guidelines of the parent organizations ISO, ITU. The ISO standard which is set forth at appendix let me get to the precise page 11892 This is section 2.14 and we would ask the panel to compare section 2.14 2.142 and Judge Brewster's finding concerning that at joint appendix 75 he explicitly found in addition to the JVT which I'll get to in a second he explicitly found that the membership had agreed that they would be governed by the guidelines and the rules of the parent organizations This section to start with of one of the parent organizations says two things in section 2.142A and when you look at it there's two sentences and those two sentences refer to a proposal and a document and the proposal is a technical proposal as Mr. Phillips referred to the document is the standard and what it says in the first sentence is if you're submitting a proposal tell us about any patent rights but then the second sentence is the one that goes further and Judge Brewster explicitly found so and correctly at page 75 of the joint appendix and I quote any party involved in the preparation of a document at the standard and that's what Judge Brewster refers to it as shall draw the attention of the committee to any patent rights of which becomes aware during any stage in the development of the document and if there were any doubt and this is something explicitly addressed with Judge Brewster that the document refers to the standard subsection C says a document shall not be public that's the standard so first you start with the JBT 3.2 and you're saying we're governed by the rules of the para-organizations then you go to the para-organizations and they say if you have a proposal disclose if you have a if you're participating and there's no doubt now that we're participating you need to disclose then go back and look at 3.2 read in that light if you read 3.2 having read 2.42 what you know is 3.2 saying okay we've got that you need to disclose as soon as possible that as soon as possible is a question of time and the best efforts is the best efforts to disclose precisely what's required in the ISO requirements and it is a requirement to disclose and you're saying best efforts is truly not what they applied best efforts is truly not what they applied and it's the contrary in fact we explicitly argued both to the jury and to the judge that best efforts require something and if what the evidence shows is that you knew of the duty that you knew of the patents that you considered whether they applied to the standard and you didn't disclose and then two years later you claimed that the patent was essential to practicing the standard and you sued and that goes to the third issue that Mr. Phillips had discussed with you which is this concept that in some ways you have to have a determination that the patent is in fact infringed by practicing the standard this case is the best example of why that is not what I think Rambis requires or suggests that's why the language reasonably may be necessary does make some sense and that's why Judge Brewster adopted it that standard is being these two patents issued in the standard begins developed in 2002 so the patents are known the claims are known when the process begins developing the real question is waiver waiver by silence that's the connector your connector my connector is silence in the face of a duty and I think that becomes critically important because I think if you go back to the Stambler opinion which is one of the first opinions in the standard setting field some people read that as saying that if you are a member of a standard setting organization you have a duty to speak notwithstanding the rules of the standard setting organization or whatever the understanding may be Rambis says let's look at what the rules say but let's look at the understanding Rambis had different fact finding different fact finding had different patents the four applications that are considered in Rambis two of them were abandoned two of them issued as patents never asserted here instead we have patents that were issued before the standard setting process began patents that were known to Qualcomm and which were actually considered by people who were participating in the standard setting process but your view of reason might be necessary it's clearly an objective standard Rambis tells us it's an objective standard you're saying you look at the time that people made the decision not at the time in which a court ultimately adjudicates that's exactly correct and your honor it has to be that way as a temporal matter because if it were otherwise you would be defeating the whole purpose of the disclosure in the standard setting process the purpose of the disclosure is particularly in this circumstance where the JVT policy is clear that they wanted to get a baseline which was royalty free now Qualcomm's brief confuses two concepts they wanted the baseline which anybody could participate in to be royalty free but they conceded that there might be add-ons you know versions 3.1 3.3 that might have patents in play but the baseline was to be well let me just interrupt because the time is running out and just to go back to Judge Rory obviously as concerned as I am with this waiver issue and you do have a footnote in your brief footnote 16 which does suggest alternatively that we could remand this to the district court to consider as an equitable estoppel defense is it your view or you suggest that we could do that on our own do we really have the authority to recast a waiver defense as an equitable estoppel defense your honor the candid answer is we could not I don't know if the court does under rule 15c the district court certainly does have the right to recast it I would suggest that you need not recast it because the concept of waiver of a right is something that certainly exists there was no dispute that the concept of waiver could apply to a patent and there really is no dispute that silence in the face of a duty to speak can constitute a waiver and what I'm trying to find right now is I think particularly sending it back down in the face of what occurred in this case where the reason that the judge didn't consider equitable estoppel is because Qualcomm affirmatively said don't consider it, yeah it's another equitable defense pled, maybe pled not specifically but don't consider it because we never participated and one thing to consider is in other words you're saying the premise has been shown to be incorrect, yeah and this actually would, a remand would I would suggest would be inappropriate for two reasons, one is I do think waiver is a sufficient basis and silence in the face of a duty to speak is a waiver and just as you can be implied licensed under a patent just as you can be equitably estopped you can have waived the second is it would turn the litigation process on its head to penalize us for not being able to assert something we tried to assert and but for one question on cross examination, one question we never would have known that we in fact had more than enough proof to assert thank you your honor you still have a couple minutes let me just ask you one other thing what do you make of the fact that the technology in the patents was known by the MPEG in the beginning that the chairman of the KVT was there and that these patents are public documents to begin with your honor I think actually while Qualcomm makes an issue of that I think it actually supports our position for these reasons. One is there's no doubt that Qualcomm knew how to disclose these patents when it wanted to disclose them and in fact did in the development of a different standard. Now Dr. Sullivan was in fact also on that committee if you were in his position you're now sitting as the chair of the JVT if you in fact had remembered that they had been submitted in the development of another standard you sure would have thought that if Qualcomm having disclosed them once thought they applied to this new standard they would have disclosed them again in fact they did not. I think that the inference and these are the inferences that I think the district court judge who saw these folks testify either by video or live was entitled to draw. Thank you your honor. Thank you. Mr. Coates Thank you your honor. Thank you your honor. I'll attempt to be brief. First of all Judge Lorraine in response to your question about the weakness of the language Mr. Lee comes through with an argument based on the ISO ignores the language of the JVT ignores the language of the ITU  language of the ISO it talks about members, parties creating documents. It doesn't talk in terms that remotely apply to this case. They devoted a grand total of about two sentences of their brief to the ISO and the rest of their argument at the ITU and there's a reason why he didn't raise that more aggressively in the briefing is because that doesn't impose any more of the duty that otherwise would exist. With respect to the best efforts question Judge Postley you asked me about it's important to go back to again to the language. Remember the best efforts only applies to encourage to the encouragement to disclose so I don't see how you get past the best efforts as a basis at least for any notion of of a waiver or anything like that. The waiver analysis that Mr. Lee puts forward is simply inaccurate I mean it is true there is such a thing as waiver but that's a known relinquishment of a right a voluntary relinquishment of a known right failure to act in the face of a duty to speak by itself is not sufficient for waiver. What you need is detrimental reliance and that's what this court held in Auckland so the absence of detrimental reliance is completely devastating on that particular issue. With respect to the point of whether there should be a remand at this stage again detrimental reliance again another affirmative defense so there's no basis for going back and using that even as a mechanism for trying to obtain any additional equitable relief and there's no point in sending it back to the district court in any of them what the court should do is say the contract speaks directly to this issue of when you have a duty to speak the judge is absolutely right that it provides no express requirement to disclose patents and indeed the language goes beyond that. It says you have a responsibility to speak when you make a technical contribution and you don't have a responsibility to speak when you don't. This court shouldn't modify that. The district court committed error in doing that. So what you should do is set that aside and as a consequence of setting that aside essentially then this case comes to a close because we lost on the question of whether the patents infringe. There's nothing left the only reason we're here fighting at this point is because the district court has gone way beyond the relief that would otherwise be available to a district court under these circumstances and imposed this extraordinary and even my friend describes it as utterly unprecedented and he's absolutely right on that and that's on that basis this court should set it all aside and bring this litigation to a close. If there are no further questions I give your honor. Thank you the case is submitted.